FILED IN CLERK'S OFFICE
U.S.D.C. Atlanta

# United States Court of Appeals
## For the Eleventh Circuit

JUN – 4 2010

JAMES N. HATTEN, CLERK
By: _____
Deputy Clerk

Nos. 09-10283 & 09-11530

District Court Docket No.
07-00282-CV-WSD-1

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT

Jan 11, 2010

THOMAS K. KAHN
CLERK

BELINDA SAUNDERS,

        Plaintiff-Appellant,

versus

EMORY HEALTHCARE, INC.,

        Defendant-Appellee.

A True Copy - Attested
Clerk U.S. Court of Appeals,
Eleventh Circuit

By: _____
Deputy Clerk
Atlanta, Georgia

----------------------------------------------------------------
Appeals from the United States District Court
for the Northern District of Georgia
----------------------------------------------------------------

## J U D G M E N T

    It is hereby ordered, adjudged, and decreed that the attached opinion included herein by reference, is entered as the judgment of this Court.

ISSUED AS MANDATE
JUN 0 3 2010
U.S. COURT OF APPEALS
ATLANTA GA

Entered:    January 11, 2010
For the Court:    Thomas K. Kahn, Clerk
By:    Patch, Jeffrey

[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

Nos. 09-10283 & 09-11530
Non-Argument Calendar

_____

<table>
<tr><td>FILED</td></tr>
<tr><td>U.S. COURT OF APPEALS</td></tr>
<tr><td>ELEVENTH CIRCUIT</td></tr>
<tr><td>JANUARY 11, 2010</td></tr>
<tr><td>JOHN P. LEY</td></tr>
<tr><td>ACTING CLERK</td></tr>
</table>

D. C. Docket No. 07-00282-CV-WSD-1

BELINDA SAUNDERS,

Plaintiff-Appellant,

versus

EMORY HEALTHCARE, INC.,

Defendant-Appellee.

_____

Appeals from the United States District Court
for the Northern District of Georgia

_____

(January 11, 2010)

Before TJOFLAT, WILSON and ANDERSON, Circuit Judges.

PER CURIAM:

Belinda Saunders, proceeding pro se, appeals from the district court's order granting summary judgment to Emory Healthcare Inc. ("Emory") in her employment discrimination action, brought pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., and 42 U.S.C. § 1981.  On appeal, Saunders argues that the district court erred by (1) denying her motion to strike a declaration attached to Emory's summary judgment motion, (2) granting in part Emory's motion to strike unauthenticated documents attached to her summary judgment response, and (3) granting Emory summary judgment on her racial discrimination, retaliation, and hostile work environment claims.  After a review of the record and the parties' briefs, we affirm.

We review district court's rulings regarding the admission of evidence deferentially, testing for an abuse of discretion.  Goldsmith v. Bagby Elevator Co., Inc., 513 F.3d 1261, 1276 (11th Cir. 2008).  "We will not overturn an evidentiary ruling unless the moving party establishes a substantial prejudicial effect."  Id.

We review the grant of summary judgment de novo.  Rioux v. City of Atlanta, Ga., 520 F.3d 1269, 1274 (11th Cir. 2008).  "Summary judgment is rendered 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of

law.'" Id. (quoting Fed. R. Civ. P. 56(c)).  "In making this assessment, the Court must view all the evidence and all factual inferences reasonably drawn from the evidence in the light most favorable to the nonmoving party, and must resolve all reasonable doubts about the facts in favor of the non-movant." Id. (quotation marks and citations omitted).

## I. Evidentiary Rulings

The district court's denial of Saunders' motion to strike the Margolis Declaration was not an abuse of discretion.  Margolis testified from personal knowledge as required by Fed. R. Civ. P. 56(e).  Saunders contends that the Declaration is inadmissible hearsay that cannot be properly considered on a motion for summary judgment, but concedes that under Fed. R. Civ. P. 56(e) and Macuba v. Deboer, 193 F.3d 1316 (11th Cir. 1999), affidavits and statements that would constitute hearsay, if reducible to admissible evidence, may be properly considered in support of a motion for summary judgment.  In Macuba, this Court stated that "a district court may consider a hearsay statement in passing on a motion for summary judgment if the statement could be reduced to admissible evidence at trial or reduced to admissible form." Id. at 1323 (internal quotation marks omitted).  As the district court correctly concluded, any documents attached to the Declaration are either non-hearsay or could be reduced to admissible form.

3

Saunders' further arguments are unavailing. Saunders argues that the district court erred by requiring her to file an affidavit to dispute the Margolis Declaration. Saunders misapprehends the district court's statement that Saunders was <u>permitted</u> to submit affidavits disputing the Margolis Declaration. To the extent that Saunders argues that the Margolis Declaration should have been stricken based on inconsistencies with the record, Saunders has not supported that argument. Therefore, the district court did abuse its discretion by refusing to strike the Margolis Declaration. Saunders argues that Exhibits 9-35 of her own deposition should be stricken. Because Saunders' motion to strike focused only on the Margolis Declaration and not Exhibits 9-35, this Court will not consider that argument for the first time on appeal. <u>See Bryant v. Jones</u>, 575 F.3d 1281, 1308 (11th Cir. 2009) ("It is well established in this circuit that, absent extraordinary circumstances, legal theories and arguments not raised squarely before the district court cannot be broached for the first time on appeal.").

The district court's decision to grant in part Emory's motion to strike Saunders' unauthenticated exhibits was not an abuse of discretion. To be admissible in support of or in opposition to a motion for summary judgment, a document must be authenticated by and attached to an affidavit that meets the requirements of Rule 56(e) and the affiant must be a person through whom the

exhibits could be admitted into evidence. 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure: Civil § 2722, at 382-84 (3d ed. 1998). Because the exhibits were not properly authenticated, the district court was not required to consider them in opposition to Emory's motion for summary judgment. Moreover, many of the stricken exhibits were authenticated by either Emory or deponents in the case; therefore, striking Saunders' exhibits did not cause a substantial prejudicial effect. Because Saunders' exhibits were not properly authenticated and the decision to strike them did not cause a substantial prejudicial effect, the district court did not abuse its discretion by striking the exhibits.

## II. Discriminatory Hiring

"Racial discrimination claims based on circumstantial evidence are evaluated under the McDonnell Douglas burden shifting framework." Burke-Fowler v. Orange County, Fla., 447 F.3d 1319, 1323 (11th Cir. 2006). A plaintiff establishes a prima facie case of disparate treatment by showing that: "(1) she is a member of a protected class; (2) she was subjected to an adverse employment action; (3) her employer treated similarly situated employees outside of her protected class more favorably than she was treated; and (4) she was qualified to do the job." Id. Once the plaintiff establishes a prima facie case, "then the

5

defendant must show a legitimate, non-discriminatory reason for its employment action." Id. Once the defendant meets that burden, "then the plaintiff must prove that the reason provided by the defendant is a pretext for unlawful discrimination." Id.

A. CNS Position

Saunders concedes in her brief that the Clinical Nurse Specialist (CNS) position is not in dispute in this case. Therefore, she has waived any argument that Emory engaged in discrimination with regard to that position.

B. EC Position

The weight of the record indicates that the Educational Coordinator (EC) position was never created. Saunders, however, appears to contend that the CNS position, posted in December 2002 and filled in March 2003, was actually the EC position. In support, she cites Emory's admission in its Answer that "Paula Funderburke held the position of Education Coordinator." Regardless of the title of the position, it is undisputed that Saunders did not formally apply for the position posted in December 2002. Moreover, even assuming that a general issue of material fact remains as to whether the EC position was created, Saunders' claims in regard to the position are time barred.

6

In its motion for summary judgment, Emory argued that, assuming the position posted in December 2002 and filled in March 2003 was the EC and not the CNS position, Saunders' claims under Title VII and § 1981 are barred.  Saunders does not dispute that any claim relating to that position arising under Title VII is time barred and thus has abandoned that claim.  Furthermore, any claim relating to that position arising under § 1981 is time barred.

Claims cognizable under § 1981 prior to the Civil Rights Act of 1991 are subject to the state statute of limitations for personal injury torts.  See Moore v. Liberty Nat. Life Ins. Co., 267 F.3d 1209, 1219 (11th Cir. 2001).  Because Saunders' failure-to-promote claim was cognizable under § 1981 prior to the Civil Rights Act of 1991, Georgia's two-year statute of limitations for personal injury torts applies.  See O.C.G.A. § 9-3-33 (2007).  The position was posted in December 2002 and filled in March 2003.  Saunders filed her complaint on December 26, 2006.  Because Saunders did not file her complaint within the two-year statute of limitations, any claim under § 1981 is time barred.

C. NDD Position

Saunders does not challenge the district court's finding that she failed to establish a prima facie case of discrimination related to this position because she did not apply for the position.  See Walker v. Prudential Prop. & Cas. Ins. Co., 286

F.3d 1270, 1275 (11th Cir. 2002) (requiring plaintiff show that "she applied for and was qualified for an available position" to establish adverse employment action in failure-to-hire context) . Therefore, Saunders has waived any argument relating to this position on appeal.

D. ANM Position

Emory concedes that Saunders established a prima facie case with respect to the Acting Nurse Manager (ANM) position. Emory has proffered a legitimate non-discriminatory reason for its decision, namely that the interview panelists for the position unanimously rated Sampsel higher based on her better communication and leadership skills and because she lacked the disciplinary record that Saunders had amassed. Saunders claims the disparity in qualifications between herself and Sampsel and Emory's failure to follow its hiring policies demonstrate that Emory's proferred reason is pretextual.

"[A] reason is not pretext for discrimination unless it is shown both that the reason was false, and that discrimination was the real reason." Springer v. Convergys Customer Mgmt. Group Inc., 509 F.3d 1344, 1349 (11th Cir. 2007) (internal quotation marks omitted). In the context of promotions, we have held that "a plaintiff must show that the disparities between the successful applicant's and his own qualifications were 'of such weight and significance that no reasonable

8

person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff.'" Id. (quoting Cooper v. Southern Co., 390 F.3d 695, 732 (11th Cir. 2004)). "Standing alone, deviation from a company policy does not demonstrate discriminatory animus." Mitchell v. USBI Co., 186 F.3d 1352, 1355-56 (11th Cir. 1999).

Saunders has failed to demonstrate that Emory's preferred reason is pretextual. Emory's decision to waive the minimum years of clinical experience requirement in Sampsel's favor and to prefer Sampsel over Saunders in spite of the fact that Saunders had more clinical experience was reasonable in light of the evidence showing that Sampsel was better qualified in terms of communication, leadership, and workplace behavior, skills of great importance in a management position. Therefore, Saunders has failed to demonstrate that Emory's preferred reason is false. Moreover, Saunders has failed to produce any evidence indicating that discrimination was the actual reason behind the decision to hire Sampsel.

### III. Retaliation

"To establish a claim of retaliation under Title VII or section 1981, a plaintiff must prove that [s]he engaged in statutorily protected activity, [s]he suffered a materially adverse action, and there was some causal relation between the two events." Goldsmith v. Bagby Elevator Co., 513 F.3d 1261, 1277 (11th Cir.

9

2008). "After the plaintiff has established the elements of a claim, the employer has an opportunity to articulate a legitimate, nonretaliatory reason for the challenged employment action as an affirmative defense to liability." Id. "The plaintiff bears the ultimate burden of proving retaliation by a preponderance of the evidence and that the reason provided by the employer is a pretext for prohibited retaliatory conduct." Id.

The scope of "adverse employment actions" is broader in the anti-retaliation context than in the anti-discrimination context. In the anti-retaliation context, adverse employment actions are those that might dissuade a reasonable worker from making or supporting a charge of discrimination. Burlington N. & Santa Fe. Ry. Co. v. White, 548 U.S. 53, 68, 126 S. Ct. 2405, 2415 (2006). This Court recognized in Crawford v. Carroll, 529 F.3d 961, 973-74 (11th Cir. 2008), that Burlington Northern broadened the type of conduct actionable in a retaliation claim and effectively rejected our previous requirement of showing an ultimate employment decision or substantial employment action to establish an adverse action for a retaliation claim. In order to establish the necessary causal link, "a plaintiff merely has to prove that the protected activity and the negative employment action are not completely unrelated." Goldsmith, 513 F.3d at 1278 (quotation marks omitted).

10

The district court divided possible retaliatory actions taken after the filing of Saunders' EEOC charge into two groups: formal discipline and changes in job duties and perks. Because this is a convenient way to analyze Saunders' complaints, we will proceed in the same fashion.

A. Formal Warnings

Saunders contends that she was subjected to disciplinary warning meetings in December 2005 and January 2006 in retaliation for filing her initial EEOC charge. Assuming, as the district court found, that formal disciplinary warning meetings might well dissuade a reasonable employee from making or supporting a charge of discrimination, the burden passed to Emory to articulate a legitimate non-retaliatory reason for the warnings. The record supports Emory's claim that the meetings were motivated by numerous complaints about Saunders' workplace performance or attitude. Saunders has produced no evidence indicating the proffered reason is pretextual. The four month time lag between the filing of her complaint with the EEOC and the disciplinary warning meetings, especially standing alone, is far too attenuated to support the inference that Emory's articulated reason is actually pretext for prohibited retaliation.

B. Changes in Job Duties and Perks

11

Saunders also contends that she suffered a decrease in the frequency with which she performed charge nurse, in-service, and precepting duties and changes to her holiday and vacation schedule in retaliation for filing her initial EEOC charge. It is undisputed that the schedule changes were applied not just to Saunders but to all part-time nurses in the emergency department; therefore, Emory has proferred a non-retaliatory reason for the changes in Saunders' schedule. Saunders has no produced no evidence indicating that Emory's proferred reason is pretext for illegal retaliation. It is also undisputed that the decrease in certain duties has not resulted in tangible effects such as a decrease in pay or failure to maintain her current certification. In the wake of <u>Burlington Northern</u>, however, the employer's conduct need not reach the level of an ultimate or substantial employment action to constitute actionable adverse conduct. The conduct only need be serious enough that it might dissuade a reasonable worker from making or supporting a charge of discrimination.

The Supreme Court's discussion in <u>Burlington Northern</u> provides some insight into when an employer's conduct might dissuade a reasonable worker from making or supporting a charge of discrimination. In <u>Burlington Northern</u>, the Supreme Court concluded that even a total "reassignment of job duties is not automatically actionable." 548 U.S. at 71; 126 S. Ct. at 2417. Discussing

12

reassignments, the Court indicated that the nature of work being performed or the necessity of greater qualifications for certain duties was relevant to whether a reassignment was actionable. Id. In this case, Saunders has not suffered a total reassignment, but simply a decrease in certain responsibilities. There is no evidence that she has been assigned more difficult or arduous work in lieu of these responsibilities. Furthermore, the record indicates that these responsibilities are part of the normal duties of a Level IV registered nurse; there is no evidence that these responsibilities require greater qualifications or carry greater prestige than any of the other duties of a Level IV registered nurse. Because this slight decrease in the frequency with which Saunders performs certain job responsibilities does not rise to the level of actionable retaliation, Saunders cannot establish a prima facie case based on those actions.[1]

## IV. Hostile Work Environment

Title VII protects workers from a "workplace . . . permeated with 'discriminatory intimidation, ridicule, and insult' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" Harris v. Forklift Sys., Inc., 510 U.S. 17, 21, 114 S. Ct.

---

[1] We also note that there is no evidence supporting Saunders' further allegations that she was subjected to constructive discharge, was denied the opportunity to apply for a promotion because she was placed on a "Performance Improvement Plan," or received poor performance appraisals.

367, 370 (1993) (citation omitted). "This court has repeatedly instructed that a plaintiff wishing to establish a hostile work environment claim show: (1) that [s]he belongs to a protected group; (2) that [s]he has been subject to unwelcome harassment; (3) that the harassment must have been based on a protected characteristic of the employee, such as national origin; (4) that the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment; and (5) that the employer is responsible for such environment under either a theory of vicarious or of direct liability." Miller v. Kentworth of Dothan, Inc., 277 F.3d 1269, 1275 (11th Cir. 2002). In order to be actionable, the conduct in question must be "severe or pervasive enough to create an objectively hostile or abusive work environment–an environment that a reasonable person would find hostile or abusive." Harris, 510 U.S. at 21, 114 S. Ct. at 370. Moreover, the plaintiff must "subjectively perceive the environment to be abusive." Id. "In evaluating the objective severity of the harassment, we consider, among other factors: (1) the frequency of the conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and (4) whether the conduct unreasonably interferes with the employee's job performance." Miller, 277 F.3d at 1276.

14

The only conduct clearly presented by Saunders' for our consideration on this claim is three black-and-white motivational signs allegedly posted in employee areas and complaints made against Saunders by other employees. Saunders has presented no evidence that would allow a reasonable juror to conclude the signs are objectively racially harassing. First, it is hardly clear from the record that the signs are intended to depict black nurses at all. Second, assuming they do, the signs do not display any racially offensive motivation. Thus, it is impossible for the signs to be "severe or pervasive" enough to create an objectively hostile or abusive work environment. Saunders has also presented no evidence that would indicate that the complaints from other employees were based on her race. The record indicates that these complaints were directed towards Saunders' workplace behavior and attitude toward others without any reference to race. Moreover, Saunders concedes that she has not been subjected to any racially offensive comments. Because the complained of conduct is either not based on Saunders' race or not severe or pervasive enough to create an objectively hostile or abusive work environment, the district court did not err by entering summary judgment against Saunders on her hostile work environment claim.

15

In this case, Saunders has not identified any basis for disturbing the district court's judgment.  Accordingly, we affirm the grant of summary judgment in favor of Emory.

**AFFIRMED.**

A True Copy - Attested
Clerk U.S. Court of Appeals,
Eleventh Circuit

By: _____
Deputy Clerk
Atlanta, Georgia

16